IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Civil No. 15-5211 (JEI) |
| -and- | : | FILED *IN CAMERA* |
| THE STATE OF NEW JERSEY | : | AND UNDER SEAL |
| -and- | : | JURY TRIAL DEMANDED |
| THE STATE OF NEW YORK | : | |
| -and- | : | |
| THE CITY OF NEW YORK | : | |
| -and- | : | |
| THE CITY OF PHILADELPHIA, | : | |
| *ex rel* Anthony Digiglio and Dorson Hess Plaintiffs, | : | |
| v. | : | |
| U.S. XPRESS ENTERPRISES, INC., Defendant. | : | |

## QUI TAM COMPLAINT

Relators, Anthony Digiglio and Dorson Hess, by their undersigned counsel, hereby demand a trial by jury and complain against the above-captioned Defendant, U.S. Xpress Enterprises, Inc., as follows:

### Introduction

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims presented, or caused to be presented, or presented to the United States, in violation of the federal False Claims Act, 31 U.S.C. § 3729-

1

32, as amended (the "FCA") and specifically 31 U.S.C. § 3729(a)(1)(G) and 31 U.S.C. § 3729(h) and in violation of state and municipal authority False Claims Acts per the present Complaint and for each state and municipal authority as discussed herein. These state and municipal claims are governed by statute and/or ordinance and include the New Jersey False Claims Act, § 2A:32C-3, the New York False Claim Act, §§ 187-188, the New York City False Claims Act, §7-803, and the Philadelphia False Claims Act § 19-3601. In addition, there are constructive and actual wrongful termination claims by Plaintiffs/Relators against Defendant U.S. Xpress Enterprises, Inc., in violation of 31 U.S.C. § 3729(h).

2. Relators are residents and citizens of the United States and the Commonwealth of Pennsylvania. Relators have been or were each employed by Defendant U.S. Xpress Enterprises, Inc. for periods of approximately eighteen (18) months and Relator Digiglio continues to be ostensibly employed by Defendant U.S. Xpress Enterprises, Inc. at an outsourced location where Defendant U.S. Xpress Enterprises, Inc. provides trucking services for Pratt Industries, Inc., in Macungie, Pennsylvania. Relators were frequently assigned duties at Defendant U.S. Xpress Enterprises Inc.'s outsourced job site at 7533 Industrial Parkway, Suite 100, Macungie, Pennsylvania 18062 where Defendant U.S. Xpress Enterprises, Inc. provided and continues to provide transport services for Pratt Industries, Inc.

3. Defendant U.S. Xpress Enterprises, Inc. (hereinafter "Defendant U.S. Xpress"), is a transport and warehousing company headquartered and incorporated in the State of Tennessee and with additional related corporate entities incorporated in the State of Nevada.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on

this Court for action pursuant to 31 U.S.C. § 3730. The state and municipal law claims elucidated herein are subject to pendent jurisdiction whereby federal courts have jurisdiction to assess state and municipal authority claims arising out of the same incidents as those federal False Claims issues properly addressed in federal court.

5. This Court has jurisdiction over Defendant U.S. Xpress pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because Defendant U.S. Xpress has transacted a significant portion of the business that is the subject matter of this lawsuit in the District of New Jersey and in the above-captioned states and municipalities.

6. Venue is proper pursuant to 31 U.S.C. § 3732(a) in that Defendant U.S. Xpress has transacted the fraudulent business that is the subject matter of the present lawsuit in the District of New Jersey.

**Facts**

7. Relators have prepared and will provide this Complaint to the Attorney General of the United States, the United States Attorney for the District of New Jersey, and all other appropriate civil authorities, a Factual Disclosure Statement pursuant to 31 U.S.C. § 3730(2) of material evidence and information in their possession related to the Complaint and of which they are the original source. This disclosure supports the existence of the claims being filed and presented herein. The same disclosures will be provided to the aforementioned state and municipal authorities as per the accompanying Certificate of Service.

8. The United States Department of Transportation (the "DOT") is entrusted by law 49 U.S.C. §§ 352, *et seq.*, with a number of subordinate Agencies relevant to the present Complaint including, but not limited to, the Federal Highway Administration, the Federal Motor Carrier Safety Administration, the National Highway Traffic Safety Administration, and the

Office of Inspector General for the Department of Transportation. The DOT's mission is to serve the United States by ensuring a fast, safe, efficient, accessible, and convenient transportation system that meets the nation's vital national interests and enhances the quality of life of the American people, today and into the future.

9. Relator Digiglio has been employed by Defendant U.S. Xpress since June 13, 2012, and continues to officially be employed by Defendant U.S. Xpress but is not provided with any current assignments because of, *inter alia*, the allegations alleged herein and complaints associated therewith. Relator Digiglio has most recently worked at 7533 Industrial Parkway, Suite 100, Macungie, Pennsylvania, 18062, where Defendant U.S. Xpress provided and continues to provide transport services for Pratt Industries, Inc. Relator Digiglio has also previously worked on outsourced assignments for Defendant U.S. Xpress at Taylor Farms, New Jersey, Inc., in Swedesboro, New Jersey. For these projects, Defendant U.S. Xpress engaged in the same practices as alleged in detail herein regarding activity at Pratt Industries, Inc. Relator Hess was employed by Defendant U.S. Xpress from October 9, 2013 until March 4, 2014, when Relator Hess was forced to resign and seek new employment because his assignments were limited due, *inter alia*, to the complaints related to the allegations detailed herein.

10. Relators were truck drivers at Defendant U.S. Xpress' outsourced location and roles included delivering and picking up products.

11. In their period of employment with Defendant U.S. Xpress, Relators were repeatedly encouraged and effectively forced to turn off and/or modify data associated with their Personal Driver Login I.D.s and/or to alter driver tech/sat com driver hour information in order to simulate that Relators were driving less hours than they were actually driving and thereby fraudulently verifying driving hours and underreporting hours to the DOT and other government

agencies. Relator Digiglio occasionally complied under duress and Relator Hess complied on one occasion in or around November of 2013 when he was on the road with his vehicle during a snow storm on the way back from Castleton-on-Hudson, New York. Wayne Osbourne, U.S. Xpress fleet manager, informed Relator Hess that he would not be put up at a hotel despite running over legal driving hours and Relator Hess was told to turn off his electronic driver's log and to drive back to Macungie, Pennsylvania. Usually it is a matter of driver discretion as to whether it is safe to drive in the snow but Defendant U.S. Xpress, through Wayne Osbourne, ordered Relator Hess to drive back to Macungie from Upstate New York. Both Relators frequently complained about lack of compliance with federal regulations, non-payment of appropriate taxes and highway tolls, false reporting to the government, and general safety. These complaints were ignored and other drivers frequently violated and continue to violate federal law and other regulations regarding driver driving time limits. All drivers at the outsourced location had and have hours of service violations which include eleven (11) hours of driving in one (1) day, a maximum of a fourteen (14) hour work day, and a maximum of seventy (70) hours in an eight (8) day period. Drivers also violated the thirty-four (34) hour reset rule which mandates that a truck driver must be off duty for a minimum of thirty-four (34) hours, which must include two consecutive days of 1 a.m. to 5 a.m., after accruing a maximum seventy (70) hours and to qualify for a restart. In addition, a driver cannot do more than one reset within a one-hundred-and-sixty-eight (168) hour period which is a total hour figure including driving time, non-driving work time, and rest time. There were frequent violations of these regulations including doing second runs off the clock in the same day, no accounting for yard jockeying driving time when trucks are moved around the depot, and drivers illegally taking mandatory thirty (30) minute breaks while still being in their cabins when their truck was being loaded or unloaded and during

refueling. The cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities. In the course of commission of the above fraudulent acts Defendant U.S. Xpress purposefully falsified trip sheets, bills of lading, scale tickets, and time sheets and paystubs.

12. The alleged practices detailed herein and subject to 49 U.S.C. Subtitle B, Chapter III, Part 386, Subpart G, Appendix B (i) states that "[a] person, or an officer, employee, or agent of that person, that by any means tries to evade regulation of motor carriers under Title 49, United States Code chapter 5, chapter 51, subchapter III of chapter 311 (except sections 31138 and 31139) or section 31302, 31303, 31304, 31305(b), 31310(g)(1)(A), or 31502, or a regulation issued under any of those provisions, *shall* be fined at least $2,000 but not more than $5,000 for the first violation and at least $2,500 but not more than $7,500 for a subsequent violation." (emphasis added). This is indicative that the practices detailed herein, which occur daily by multiple drivers and nationwide, are subject to mandatory, non-discretionary, and immediately owing of at least $2,500 per instance. In addition, there is extensive "is subject to" language for other violations per the statute and Amendment(s) effective June 2, 2015 because violations are on-going and continuous. The States of New Jersey and New York have adopted standards set by the Federal Motor Carrier Safety Administration (FMCSA) which, *inter alia*, engages in enforcement of the above statutory scheme.

13. Relators and other drivers such as an African-American male named Herb, an African-American male named Dan, a Hispanic male named Carlos, and an African-American male named Christian have also been continuously encouraged and effectively forced by Defendant U.S. Xpress to minimize and underreport federally mandated break times to the DOT and other government agencies which mandate a thirty (30) minute break within eight (8) hours of service. For instance, while at Pratt Industries, Inc., in Staten Island, New York, truck drivers impermissibly took their thirty (30) minute breaks while their trucks were being loaded and/or unloaded. The cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or underreporting obligations to pay or transmit money or property to the federal Government and other state and municipal authorities. Relators and other drivers engaged in the same or similar practices when they drove for Defendant U.S. Xpress and delivered and/or picked up from various locations. In the State of New Jersey, Relators and other Defendant drivers delivered to Newark Warehouse, 84 Lockwood Street, Newark, NJ 07105, Ready Pac, 700 Railroad Avenue Florence, NJ 08518, Wambach, 268 Martin Luther King Avenue, Morristown, NJ 07960, Fidelity Paper, 901 Murray Road, East Hanover, NJ 07936, Pennsauken Store, 1050 Thomas Bush Memorial, Pennsauken, NJ 08110, Beta Plastics, 120 Amor Avenue, Carlstadt, NJ 07072, and Pratt Retail, 200 Docks Corner Road, Dayton, NJ 08810. In the State of New York, Relators and other Defendant drivers delivered to Avco Industries, 120 Windsor Place, Central Islip, NY 11722, Empire Packaging, 1290 Route 9, Castleton On Hudson, NY 12033, Sigma Aerospace Metals, 365 Oser Avenue, Hauppauge, NY 11788, Quality Carton, 617 Little Britain Road, New

Windsor, NY 12553, Lanco York, 81 Modular Avenue, Commack, NY 11725, Pavero Cold Storage, 151 Clarks Lane, Milton, NY 12547, and Melville Warehouse International, 290 Spagnoli Road, Melville, NY 11747. In New York City, Relators and other Defendant drivers delivered to Plymouth Beef Company, 355 Food Center Drive, Bronx, NY 10474 and frequently to Pratt Paper, Inc., 4435 Victory Boulevard, Staten Island, NY 10314. In Philadelphia, Relators and other Defendant drivers delivered to Restaurant Depot at 2905 Roberts Avenue, Philadelphia, PA 19129. All Defendant drivers, including Relators, used the highways in these state and municipal locations.

14.     Relators, on trips to the New York area, would take New Jersey Route 78 between Pennsylvania and New Jersey and would continue on Route 95 in New Jersey, which is the turnpike. They would then use all the New York bridges while continuing on Route 80 including the George Washington Bridge, Route 95, over the Throgs Neck Bridge, Route 278 over the Verrazano–Narrows Bridge, Route 278 over the Goethals Bridge, Route 440 over the Outerbridge Crossing, and Route 287 over the East Tappan Zee Bridge. There are federal, state, and municipal tolls on these routes. There are also tolls on Route 87 North in upper New York that Relators crossed at Exit 17 and, in addition, there is another toll further up Route 87 North that Relators took on trips to Castleton-on-Hudson.

15.     Relators and other drivers for Defendant U.S. Xpress, as mentioned above, were also encouraged and effectively forced by Defendant U.S. Xpress to impermissibly turn off their On Guard System which indicates when trucks are too close to cars and other vehicles in front of them, thereby allowing for faster driving and negatively impacting safety.

16.     Relators were also encouraged and forced to sign fraudulent bills of lading that testified to particular weights of trucks and cargoes when trucks were never weighed so Relators

and other employees of Defendant U.S. Xpress never had any knowledge of the actual weight of their trucks. The implication of failing to weigh trucks and the distribution of weight on trucks' axels means that there were negative safety implications but, in addition, Defendant U.S. Xpress failed to pay appropriate taxes based on weight to the U.S. Treasury and other authorities and also continuously failed to pay appropriate highway toll fees, a portion of which would have gone to the federal government and other state and municipal governments. The cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.

17. There were other violations committed, including but not limited to, no pre-trip and post-trip inspections, which are mandated inspections to determine the roadworthiness of trucks, faulty equipment, engine warnings which were ignored, cracked windshields, and so on. Each of these violations was designed to save Defendant U.S. Xpress money and avoid the payment of government fines and other fess and put the public and its own employees in danger. By violating these regulations on a daily basis with approximately twenty (20) drivers in Relators' site alone, Defendant U.S. Xpress has to this point avoided paying substantial taxes to the U.S. Treasury, the DOT, and other government agencies and has gained a substantial competitive advantage over law-abiding competitors. Any kind of inspection of Defendant U.S. Xpress' operation will show that all of the violations detailed in the present Complaint continue to this day and will continue absent necessary governmental intervention. The cumulative effect

of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities. Defendant U.S. Xpress also falsified federally-mandated Trip Sheets and Scale Tickets. Pay stubs corroborate falsification of working hours and illustrate illegal activity and company credit card fuel station receipts show that trips reported were impossible given the mileage covered and the manipulated trip times reported. The fine for each failure to conduct a pre-trip inspection is, for example, $3,000 and these inspections are never done. In addition, this is all-the-more problematic because Defendant U.S. Xpress' eighteen trucks at Macungie are not properly serviced on a legally frequent basis and trucks have, *inter alia*, broken windshields, leaking oil, broken doors, ignored safety warning lights, damaged tires, and trucks cut out during highway driving. This purposeful avoidance of pre-trip requirements, counter to verified statements to the contrary, continues to the present time with Relators providing video evidence of same from April 20, 2015.

18. Relators constantly complained about these practices and refused to sign illegal bills of lading, fraudulent paper time logs and trip sheets, and related government compliance documents, which Defendant U.S. Xpress purposefully and falsely submitted to the DOT and other government agencies.

19. Relators' complaints angered Defendant U.S. Xpress' management and resulted in Relator Digiglio not getting any assignments and Relator Hess being forced to resign because he also had insufficient work assignments.

20. Relators complained to direct managers, such as Wayne Osbourne (Defendant U.S. Xpress' Driver Manager), David Tomscheck (Defendant U.S. Xpress' Head of Safety), and Donita Kemmerer (Defendant U.S. Xpress' Human Resources Manager) and, yet, no remedial action has followed and Relators were instructed to just get on with the job and not to upset relations with Pratt Industries, Inc. Relators have extensive written communication that will prove that Defendant U.S. Xpress' managerial structure sought and continues to seek to avoid costs associated with adherence to DOT and other regulations and to avoid paying appropriate taxes and toll fees for its vehicles. Donita Kemmerer admitted by telephone to Relators that corporate headquarters in Tennessee is aware of a nationwide policy and practice of such violations but said that nothing would be done to remedy violations until Defendant U.S. Xpress was caught and sanctioned by some government body.

21. The effects of Defendant U.S. Xpress' illegal activity has been to adversely affect the safety of the highways, including contributing to numerous accidents as detailed in the accompanying Factual Disclosure Statement and to limit appropriate tax and other government payments, including appropriate highway toll fees, to the United States Treasury, the DOT, and other governmental entities, to put driving members of the public in danger of death and serious injury because of Defendant U.S. Xpress trucks, and has directly contributed to falsely reported vehicular crashes reported as accidents on the public highways but really attributable to Defendant U.S. Xpress' fraudulent acts and omissions. The cumulative aim of Defendant U.S. Xpress is to limit expenditures and to avoid paying appropriate government taxes and fees with the implication of extensive costs to the government and the citizens of the United States and the citizens and residents of state and municipal authorities. Each time a driver tampers with a driver log, the fine is at least $11,000 and this happened daily with up to twenty (20) drivers.

Violations are easily provable because drivers were overpaid because inflated levels of pay did not and cannot reflect the legal hours that were fraudulently limited to purportedly comply with federal regulations. The further cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.

## Causes of Action

### COUNT ONE: DELIBERATE AVOIDANCE OF DOT AND OTHER REGULATIONS, TAXES, MANDATORY FEES AND FINES IN VIOLATION OF FEDERAL, STATE, AND MUNICIPAL LAW

22. Paragraphs 1 through 21 are incorporated herein by reference as though fully set forth.

23. Defendant U.S. Xpress and its managerial structure deliberately sought to flout DOT and other regulations in order to, *inter alia*, save money, preserve its contractual relationship with Pratt Industries, Inc., avoid paying appropriate taxes and fees to the government, and illegitimately gain a competitive advantage over industry competitors. In addition, Defendant U.S. Xpress has falsified government documents to avoid paying appropriate taxes and fees, including highway toll fees.

24. The direct effect of Defendant U.S. Xpress actions has been to jeopardize the safety of its own drivers and to all American road users. The deliberate actions of Defendant U.S. Xpress were designed to flout DOT and other safety regulations in order to save money and avoid paying taxes, fines, and fees and Defendant U.S. Xpress continues in its illegal practices.

25. The information and evidence that Relators will provide will detail the extent of violations so that appropriate back fines, taxes, and fees may be levied and other action taken in order to ensure future compliance and general safety. The cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress knowingly making, using, and causing to be made and used, false records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.

### COUNT TWO: RETALIATION AGAINST RELATORS IN VIOLATION OF 31 U.S. CODE § 3730(h)

26. Paragraphs 1 through 25 are incorporated herein by reference as though fully set forth.

27. Defendant U.S. Xpress, in addition to ignoring Relators' complaints and encouraging illegal activity, has retaliated against Relators by minimizing assignments that are allocated to Relators. This has forced Relator Hess to resign on March 4, 2014, in order to attain alternative employment. In addition, Relator Digiglio has effectively been out of work because he has not received driving assignments. Relator Digiglio was also threatened with being sent for a medical in order to limit his driving unless he adhered to Defendant U.S. Xpress' demands that he engage in illegal practices detailed herein. Relators brought the fraud to Defendant U.S. Xpress' attention. Thus, Defendant U.S. Xpress knew that Relators were engaged in highlighting the fraud and criminality and Relators suffered retaliation because of their objections and reporting.

28. The decision to fail to assign jobs to Relators has been an uncorrected conscious decision by Defendant U.S. Xpress in order to ensure that Relators would not affect its ongoing

fraudulent enterprise and to punish Relators for failing to comply with Defendant U.S. Xpress' deliberate acts and omissions relating to its ongoing encouragement of those in its employ to violate the law in order to avoid paying taxes and other fees to the U.S. Treasury and other government entities.

29. Relator Digiglio was also, as stated, threatened that he would be sent for a medical if he complained and did not do what he was told and this would have thereby limited Relator Digiglio's ability to drive and earn money.

## Prayer for Relief

WHEREFORE, Relators request that this Court enter judgment in their favor and against Defendant U.S. Xpress:

a.  For an amount equal the amount of damages the United States has sustained because of Defendant U.S. Xpress' actions, plus a civil penalty of not less than Title 49, United States Code chapter 5, chapter 51, subchapter III of chapter 311 for each purposeful attempt to evade federal regulation;

b.  For a judgment in favor of Relators, as Qui Tam Plaintiffs, in the maximum amount allowed pursuant to §3730(d) of the False Claims Act and/or any other applicable provision of law including compensation for retaliation;

c.  For a judgment in favor of Relators, as Qui Tam Plaintiffs for all costs of this action, including, but not limited to, attorneys' fees, expert fees, and court costs;

d.  Attorneys' fees, costs, and disbursements;

e.  For a judgment in favor of Plaintiffs and Relators for such other and further relief as the Court deems just and proper; and

f.  Punitive Damages.

## Demand for Jury Trial

Relators hereby demand a jury trial.

Respectfully submitted,

STEPHEN T. O'HANLON, ESQUIRE

July 6, 2015

Stephen T. O'Hanlon, Esquire
The O'Hanlon Law Firm, P.C.
NJ Bar ID # 027612008
Attorney for Relators
2 Penn Center, Suite 1850
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102
Tel: (267) 546-9066
Fax: (215) 567-1998
steve@ohanlonlawfirm.com